**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WARREN EASLEY,** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 23-cv-1718** |
| | : | |
| **JOHN WETZEL, et. al.,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM OPINION</u>

**Goldberg, J.**                                                                                              **July 23, 2024**

Numerous Commonwealth Defendants[1] have filed a motion for partial dismissal of Plaintiff Warren Easley's pro se complaint alleging various violations of his rights under the First, Eighth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, and under state common law. (ECF No. 22). Although most of Easley's claims are not viable, there are a few which are. Consequently, the Commonwealth Defendants' motion shall be granted in part and denied in part.

## I.      FACTUAL AND PROCEDURAL BACKGROUND[2]

---

[1]   The Commonwealth Defendants are John Wetzel, George Little, Mandy Sipple, Jaime Sorber, Tabb Bickell, Joseph Terra, David Mascellino, Andrew Reber, Jamie Luquis, Kevin Young, Michael Bianco, Michelle Trinh, Jonathan Hall, Dion Hunter, Matthew Kull, Kysherald Patterson, Ijia Phillips, James Nicholson, Richard Thompson, George Smits, Joseph Gonzalez, Decon Voorhees, James Martin, Anthony Talarico, Moises Mateus, Tyler Moser, Jeff Brewer, Jamal Gilliard and Anthony Hamilton.

[2]   Reading them in the light most favorable to the Plaintiff, the facts set forth herein are all taken from Easley's Complaint with Jury Demand, which was filed on May 3, 2023. (ECF No. 2).

Easley is an inmate in the Pennsylvania state correctional system who is currently incarcerated in the State Correctional Institution ("SCI") at Rockview, in Bellefonte, Pennsylvania. Easley initiated this action on May 23, 2023 to obtain redress for injuries allegedly inflicted by the Commonwealth Defendants between 2015 and 2022 in violation of federal and state law while he was an inmate at SCI Phoenix.   The complaint is 58 pages long, contains 284 numbered paragraphs, and endeavors to assert claims for the following violations of federal constitutional law:

- Excessive force

- Cruel and unusual punishment

- Failure to protect and/or failure to intervene

- Failure to train

- Deliberate indifference

- Denial of medical care

- Conditions of confinement

- Due process

- Freedom of speech/expression.

Easley also raises the following state law claims:

- Medical malpractice

- Negligence

- Conversion and damage to personal property.

These claims arise out of Easley's purported beatings, threats, and otherwise violent encounters with SCI Phoenix corrections officers ("COs") Smits, Gonzalez, Kull, Voorhees, Martin, Mateus, Hunter, Brewer, Gilliard, Hamilton, and Thompson, and his alleged outright

denial of, or receipt of improper medical and dental care from Defendants Goldberg, Walsh, Annino, Bazel, DiFrangresco, Bianco and Trinh.[3]   Easley also avers that CO Hunter and Unit Manager Luquis removed various items of his personal property from his cell, including rugs and several "non-nude" magazines, which were never returned, and photographs and books, which were returned in a damaged condition.   Easley seeks reimbursement for the removed and/or damaged property, and further asserts that the magazines were confiscated pursuant to a prison policy biased against heterosexual men and in violation of his rights to due process, freedom of speech and freedom of expression.

The Commonwealth Defendants first move to dismiss all of Easley's § 1983 claims to the extent they are being asserted against them in their official capacities as state employees.   In addition, Defendants seek to dismiss those portions of Easley's conditions of confinement claim which relate to an alleged incident in 2015 as barred by the statute of limitations, and Easley's state law claims as barred by state sovereign immunity.   Finally, Defendants move for the dismissal of Easley's First and Fourteenth Amendment claims arising out of the withholding of his magazines and his solitary confinement.

## I.    LEGAL STANDARDS

The Commonwealth Defendants invoke Fed. R. Civ. P. 12(b)(6) in moving for partial dismissal of Easley's complaint.   Under that Rule, "[t]he question is 'not whether [the plaintiff] will ultimately prevail, but whether [the] complaint [is] sufficient to cross the federal court's [pleading] threshold," which "requires a 'showing,' rather than a blanket assertion, of entitlement

---

[3]   Of these defendants, only Bianco and Trinh are employed by the Commonwealth.   In a separate filing, Defendants Saeed Bazel, M.D., Jason Goldberg, D.O., Carol Annino, D.O., and Jenna DeFrangresco, CRMP, (the "Medical Defendants"), also move for dismissal of Easley's complaint or, alternatively, the entry of summary judgment.   (ECF No. 25).

to relief." Renfro v. Unisys Corp., 671 F.3d 314, 320 (3d Cir. 2011) (quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (3d Cir. 2011). A complaint does not need detailed factual allegations and "need not pin plaintiff's claim for relief to a precise legal theory"; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. In deciding whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accepting all factual allegations as true and drawing all reasonable inferences in favor of the non-moving party, and must then determine whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief. Cheney v. Daily News L.P., 654 F. App'x. 578, 580 (3d Cir. 2016); Pearson v. Sec'y Dep't of Corr., 775 F.3d 598, 604 (3d Cir. 2015). Stated otherwise, to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). And of course, pro se pleadings are held to less stringent standards than those prepared by counsel and must be liberally construed. Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244 (3d Cir. 2013) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). Accordingly, while courts are to apply the relevant legal principles even when a complaint fails to name them, pro se litigants "cannot flout procedural rules" and "still must allege sufficient facts in their complaints to support a claim." Id. at 244, 245.

4

## III.    DISCUSSION

By its terms, Section 1983[4] creates no substantive rights; it merely provides remedies for deprivation of rights established elsewhere.  <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 816 (1985). "The first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all."  <u>Chavarriaga v. N.J. Dep't of Corr.</u>, 806 F.3d 210, 222 (3d Cir. 2015) (quoting <u>Nicini v. Mora</u>, 212 F.3d 798, 806 (3d Cir. 2000)).  In a Section 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1998).  These allegations may take the form of  "describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."  <u>Chavarriaga</u>, 806 F.3d at 222 (internal quotation omitted).

Furthermore, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability."  <u>Wharton v. Danberg</u>, 854 F.3d 234, 243 (3d Cir. 2017). It is settled law that under Section 1983, "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  <u>Iqbal</u>, 556

---

[4]    In pertinent part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable . . .

U.S. at 662. But there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds,* Taylor v. Barkes, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Id. (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). A supervisor may also "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." Id. "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." Rode, 845 F.2d at 1207.

### A.    Official capacity claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Garrett v. Wexford Health, 938 F.3d 69, 94 (3d Cir. 2019). But a state is not a "person" within the meaning of § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989). Therefore, at the outset, the Commonwealth Defendants seek dismissal of all of Easley's claims to the extent he seeks to hold them liable in their "official" capacities.

Easley's Complaint begins by alleging that all the moving defendants are employees in one way or another of the Pennsylvania Department of Corrections who violated several of his constitutional rights. (Pl.'s Compl. ¶¶ 4-10, 12-16, 22-38). While it is obvious that "state officials literally are persons," the law is clear that a suit against a state official in his or her official capacity

is not a suit against the official but is rather a suit against the official's office.  Will, 491 U.S. at 71 (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)).  "As such, it is no different from a suit against the state itself."  Id. (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'")

The Pennsylvania Department of Corrections is an administrative department of the Commonwealth of Pennsylvania pursuant to 71 P.S. § 61 and § 732-102.  As such, Pennsylvania DOC employees share in the Commonwealth's Eleventh Amendment immunity when they are sued in their official capacities.  Turner v. AG Pa., 505 F. App'x 95, 98-99 (3d Cir. Dec. 3, 2012); Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000).  Thus, to the extent Easley is advancing claims against each of the Commonwealth Defendants in their *official* capacities, the motion to dismiss is granted and any and all of those claims are dismissed with prejudice.

### B.     Eighth Amendment Claims

Most of Easley's § 1983 claims are premised on the Eighth Amendment as he complains of cruel and unusual punishment, the use of excessive force, failure to protect and/or intervene, denial of medical care, deliberate indifference, and the overall conditions of his confinement at SCI Phoenix.

The Eighth Amendment prohibits the imposition of "cruel and unusual punishment."  U.S. CONST. amend. VIII.  This prohibition restrains prison officials from certain actions (such as use of excessive force against prisoners) and imposes on them a duty to provide "humane conditions of confinement."  Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994).  "That is, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to

guarantee the safety of inmates."  Id. (internal quotation marks and citation omitted).  For an alleged deprivation to rise to the level of an Eighth Amendment violation, it must result in the "denial of [the] minimal civilized measure of life's necessities," and a condition of confinement violates the Eighth Amendment only if it is "so reprehensible as to be deemed inhumane under contemporary standards" or "deprives an inmate of the minimal civilized measure of the necessities of life."  McKinney v. Piazza, 2022 U.S. Dist. LEXIS 225053 at *19 (D. N.J. Dec. 14, 2022) (quoting Farmer, 511 U.S. at 835); Dickens v. Taylor, 464 F. Supp. 2d 341, 348 (D. Del. 2006).  In cases charging prison officials with excessive force, an Eighth Amendment claimant must show that officials applied force "maliciously and sadistically for the very purpose of causing harm," or used force "with a knowing willingness that harm occur."  Farmer, 511 U.S. at 835-836 (quoting Hudson v. McMillian, 503 U.S. 1, 6, 7 (1992)).

As noted, the Supreme Court has also recognized the government has an obligation to provide medical care for those whom it is punishing by incarceration.  Estelle v. Gamble, 429 U.S. 97, 103 (1976).  Whether manifested by prison doctors in response to a prisoner's needs, or by prison guards intentionally denying or delaying access to medical care or intentionally interfering with prescribed medical treatment, it is only deliberate indifference to a prisoner's serious medical need which constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  Id. at 104-105.  "'Deliberate indifference entails something more than mere negligence' and is a subjective standard that requires the official to both 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and to 'also draw the inference.'"  Pearson v. Prison Health Serv., 850 F.3d 526, 538 (3d Cir. 2017) (quoting Farmer, 511 U.S. at 835-37.  A medical need is "serious" if it is one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the need for a

doctor's attention.  Monmouth Cnty. Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal citation and quotation marks omitted).  Accidental or inadvertent failure to provide adequate medical care to a prisoner does not violate the Eighth Amendment.  Helling v. McKinney, 509 U.S. 25, 32 (1993); *see also,* Estelle, 429 U.S. at 106 ("A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").  Thus, to successfully plead an Eighth Amendment violation, a plaintiff must allege: (1) that the defendants were deliberately indifferent to his medical needs; and (2) those needs were serious.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

In this manner, the deliberate indifference standard affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients, and the Courts generally disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment.  Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation marks and citation omitted).  Inherent in this latitude, however, is the assumption that such an informed medical judgment has in fact been made.  Id.  But when prison authorities prevent an inmate from receiving recommended treatment for serious medical needs, deny access to a physician capable of evaluating the need for such treatment, or where denial or delay in treatment causes an inmate to suffer a life-long handicap or permanent loss, the constitutional threshold established by Estelle has been crossed.  Helling, 509 U.S. at 32; Inmates of Allegheny, 612 F.2d at 762.

*Medical Claims*

In giving Easley's complaint a liberal reading and turning first to his medical claims against Commonwealth Defendants Michael Bianco and Michelle Trinh, both dentists, it appears they arise out of Bianco's replacement of several of Easley's fillings with silver and composite caps,

and Trinh's subsequent surgical "shaving" of one of his teeth to eliminate pain.  (Compl. ¶¶ 179-212).  Easley contends that Bianco, "was at least 80 years old, appeared out of sorts, slurred speech,". . .  "clearly was not fit to complete any surgery," and "actually forgot what he was supposed to do."  (*Id*. ¶¶ 179-180, 184). When Bianco removed Easley's silver caps and put in composites,  Easley alleges Bianco "made a mistake and had to redrill the whole cap out," causing him to sit "in the dental chair in surgery for 1 hour and 45 minutes."  (*Id*. ¶¶ 186-187).   Easley further avers that when "Bianco was done, [he] immediately knew something was wrong even though [his] mouth was numb," he "had a nerve exposed which caused . . . severe pain," and he "could not chew food, properly breathe or even talk."  (*Id.*¶¶ 188, 193).  As to Trinh, Easley alleges he had to "put in many sick call requests due to severe pain" but was ignored and when she finally saw him, Trinh "appeared annoyed and told [him] to wait, then became very abrasive and confrontational asking him why he was there.  (*Id.* ¶¶ 199-201).   Easley contends Trinh intentionally denied him an x-ray and treatment and made him wait for over a month before seeing him for the exposed nerve.  (*Id.* ¶¶ 202-207).  Even after Trinh treated him, Easley submits he still had the same problems with his teeth, and that Trinh intentionally delayed treating him to torture him and cause him pain.  (*Id.* ¶¶ 208-212).

As Easley's pleadings make clear, he is not alleging a denial of medical care, but is rather challenging the promptness in the delivery of that care and its sufficiency.  Mere medical negligence or disagreement with the treatment of an illness or condition does not give rise to an Eighth Amendment violation.  White v. Napoleon, 897 F.2d 103, 108, 110 (3d Cir. 1990) (citing Estelle, 429 U.S. at 106.  And while an exposed nerve is undoubtedly very painful, it does not rise to the level of a serious medical need, given it is generally of short duration and does not a pose a "life-long handicap."  Atkinson v. Taylor, 316 F.3d 257, 272-273 (3d Cir. 2003).  Indeed, Easley

specifically outlined in detail the treatment he received for his teeth and although he may have preferred to have been treated earlier, differently, or by Trinh from the outset, the Commonwealth Defendants were not deliberately indifferent in failing to provide Easley the care he desired. Because Easley fails to plead facts to support an inference of deliberate indifference to a serious medical need, he has not stated a plausible cause of action for denial of medical care under § 1983. The Commonwealth Defendants' motion to dismiss this claim is therefore granted with prejudice.

*Conditions of Confinement Claims*

Easley alleges there were several aspects of his conditions of confinement at SCI Phoenix which violated the Eighth Amendment.  First, he avers that on April 8, 2015, he was assaulted "numerous times" by another inmate who was "known to be a feces thrower and known to assault inmates."  (Compl. ¶¶ 122-123).  This assault ostensibly occurred at the direction of Deputy Superintendent Terra because Easley was a "known litigator and grievance filer."  (*Id.* ¶ 123-128). "The feces got in Plaintiff's face, eyes, hair and all over plaintiff's clothes" but "at no point did John Doe/Jane Doe" [an infectious nurse] "come and properly examine plaintiff for exposure with Hep C, Hep. B, or H.I.V."  (*Id*. at ¶¶ 126-127).

Next,  Easley alleges that on July 30, 2021, October 31, 2021, January 1, 2022, and January 24, 2022, he was placed in mental health and infirmary cells which were contaminated with other inmates' urine and feces and forced to live in those cells, which Lieutenants Patterson, Phillips, and Nicholson, refused to have cleaned, for up to fourteen days at a time.  (*Id.* ¶¶ 129-135).  Then, on May 16, 2022, at the direction of Deputy Superintendent Terra, Unit Manager Luquis, and Captain Young, Easley was placed in a "hard cell" in which the light was controlled from outside, there was no mattress, sheets or blanket and he was refused toilet paper, hygiene products and food trays.  (*Id.* ¶¶ 162-163).  This cell was permeated with the odor of feces and urine because Young

ordered the prison staff to not flush Easley's toilet and Easley was forced to use his hands to toilet himself, defecate in the corner, and to urinate in the sink. (*Id.* ¶¶ 164-168). Additionally, Easley avers the inmate in the neighboring cell "was paid by defendants . . . Young, Hall and Luquis to torture" him by pounding on his toilet "constantly all night to prevent [Easley] from sleeping." (*Id.* ¶¶ 169-170).

As with numerous federal statutes enacted prior to 1990, § 1983 does not contain a specific statute of limitations. Wilson v. Garcia, 471 U.S. 261, 266 (1985). The Supreme Court, however, has resolved the matter by declaring that courts entertaining § 1983 claims are to "borrow" the state statute of limitations for personal injury actions. Owens v. Okure, 488 U.S. 235, 236 (1989) (citing Wilson, *supra*). In Pennsylvania, the statute of limitations for personal injury actions is two years. 42 Pa. C. S. § 5524; Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 589 (3d Cir. 1998). Given that Easley did not file his complaint in this matter until May 3, 2023, his first conditions of confinement claim, premised upon an event which took place on April 8, 2015, is clearly time-barred, and is therefore dismissed.

Easley's claims arising out of the other, July 30, 2021, October 31, 2021, January 1, 2022, and January 24, 2022, incidents survive the Commonwealth Defendants' motion. Again, the standard for stating a cause of action under the Eighth Amendment based on a prisoner's conditions of confinement requires the condition to be "so reprehensible as to be deemed inhumane under contemporary standards" or one which "deprives an inmate of the minimal civilized measure of the necessities of life." *See, e.g.,* Farmer, 511 U.S. at 835. Living in a cell without a working toilet, mattress, sheets, or blanket, permeated with feces and urine, and being denied basic toiletries could well be viewed by a jury as an inhumane deprivation of life's minimal civilized necessities. I therefore find the facts which Easley has pled surrounding those incidents are sufficient to

12

plausibly state viable causes of action under the Eighth Amendment against the defendants named, and the motion to dismiss is denied as to those claims.

## C.        First Amendment Claim

Easley has also endeavored to advance a claim under the First Amendment arising out of the seizure of several of his "non-nude" magazines having the titles of "YKTV Viral – I love Girls (Gold) Vol. #5," "YKTV Viral Fetish – I love Feet," "YKTV Viral – I love Girls (black) Vol. #5," "Viral I love girls Deluxe – Jesse thice," and "YKTV Viral I love Girls (Platinum) Vol. #5." (Compl. ¶¶ 236-237).  Easley contends he was denied access to these magazines pursuant to a "spurious," and "substantially overbroad" policy "bias[ed] toward heterosexual men" in violation of his rights to freedom of expression and free speech.  (Compl. ¶¶ 240-241, 252).

It is well-settled that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," and that "federal courts must take cognizance of the valid constitutional claims of prison inmates.  Turner v. Safley, 482 U.S. 78, 84 (1987).  But running a prison "is an inordinately difficult undertaking that requires expertise, planning and the commitment of resources."  Id. at 85.  By its nature, "incarceration almost always results in a narrowing, not a broadening, of constitutional protections."  Fraise v. Terhune, 283 F.3d 506, 515 (3d Cir. 2002).  Often, inmates' constitutional rights "must in some respects be limited in order to accommodate the demands of prison administration and to serve valid penological objectives."  Id. And given that the judiciary is "ill equipped to deal with the increasingly urgent problems of prison administration and reform," it "should therefore give significant deference to judgments made by prison officials in establishing, interpreting, and applying prison regulations."  Id. (citing Turner, 482 U.S. at 84-85).

When a prison regulation impinges on inmates' constitutional rights, however, it must be reasonably related to a legitimate penological interest and not be an "exaggerated response" to such objectives to be valid.  Beard v. Banks, 548 U.S. 521, 528 (2006) (quoting Turner, 482 U.S. at 87).  In Turner, the Supreme Court identified four "relevant" questions to ask in determining the reasonableness of the regulation at issue."  482 U.S. at 89.  These are:

> First, is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it?  Second, are there alternative means of exercising the right that remain open to prison inmates?  Third, what impact will accommodation of the asserted constitutional right have on guards and other inmates, and on the allocation of prison resources generally?  And fourth, are ready alternatives for furthering the governmental interest available?

Beard, 548 U.S. at 529 (quoting Turner, 482 U.S. at 87) (internal quotation marks omitted).

Easley's challenge is to the Department of Corrections policy governing inmate mail and incoming publications.   (Compl. ¶¶ 235, 240, 250-252).   That policy, DC-ADM-803, https://www.cor.pa.gov/DOC/policies.aspx, in Section 2(e)(1)(c), prohibits "correspondence, publications, and/or photographs containing explicit sexual material (other than in narrative form) and/or nudity" from "entering a facility or being possessed within a facility" unless the DOC determines that it has "artistic, educational, or medical value."  (DC-ADM 803 at 2-7). "Obscene material is illegal and will not be permitted under any circumstances."  Id.  This policy has previously been found by the Third Circuit to be constitutional under Turner insofar as "the DOC Officials have an undisputed legitimate governmental interest in maintaining prison safety and security," and "all they need to do to prevail is demonstrate that the policy drafters could rationally have seen a connection between the policy and the penological interest."  Fontroy v. Beard, 559 F.3d 173, 182 (3d Cir. 2009) (internal quotation marks and citation omitted).

Easley contends the five magazines to which he was denied access "all are non-nude magazines of women in bikinis . . . which [he] has purchased on many occasions with no issues,"

and that he "currently has 17 magazines from the same company YKTV viral in which all magazines are non-nude and is adamant to not show nipples or genitals." (Compl. ¶¶ 236, 239). He filed a Grievance with respect to the withholding of the magazines which was denied and the denial was upheld by the Secretary's Office of the Pennsylvania Department of Corrections. (Comm. Defs.' Mot. Dismiss Ex. A, ECF No. 22). As noted in the DOC's Final Appeal Decision, the Policy Office reviewed the publications in question and found the denial of Easley's Grievance to be appropriate because the publications contained sexually explicit photos. The Glossary of Terms included within DC-ADM 803 states "obscene material" is, *inter alia,* "[a]ny book, photograph, pamphlet, magazine, printed matter, sound recording, explicit and detailed verbal description, narrative account, or other material . . . if . . . an    average    person    applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest." Because the DOC policy is reasonably related to a legitimate penological interest and Easley's magazines contained material found to be obscene within that policy's definitions, Easley fails to state a cause of action based on the First Amendment on which relief can be granted under <u>Turner v. Saffley</u>. This claim is therefore also dismissed with prejudice.

Easley's complaint may also be interpreted as endeavoring to plead a claim under the 14th Amendment for deprivation of his right to property without due process of law. The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property, and those who seek to invoke its procedural protections must establish that one of these interests is at stake. <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005). An essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case before one is deprived of any significant property interest. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542 (1985) (internal quotation marks

and citations omitted).  The pre-deprivation hearing need not be a full evidentiary hearing and need not be elaborate.  Id. at 545.  Rather, all the process that is due are notice and an opportunity to respond, either in person or in writing, why a proposed action should not be taken.  Id. at 546.

On its face, Easley's complaint states he was given the opportunity to challenge the withholding of his magazines through the grievance process, he availed himself of that process and of his right to appeal the denial of the grievance through the DOC procedures governing grievances, but his appeal was denied and the decision to withhold the materials was upheld.  It is therefore clear that Easley received all the process he was due and he does not have a viable claim that the Defendants denied his Fourteenth Amendment rights.

### D.   Eighth and Fourteenth Amendment Conditions of Confinement Claim Arising From Placement on Restrictive Relief List and Confinement in Intensive Management Unit

Easley next asserts his Eighth Amendment rights to be free from cruel and unusual punishment and his rights to procedural due process under the Fourteenth Amendment were violated by DOC Secretaries Wetzel and Little, and Executive Secretary Bickell because he did not have an opportunity to challenge his placement on the Restrictive Relief List ("RRL") for more than five years and he was not "seen every six months by the secretary or executive secretary of the DOC", as he was "supposed to."  (Compl. ¶¶ 256-261).  According to Easley, RRL status is a state of administrative custody where an inmate is held in solitary confinement in the Intensive Management Unit and is subject to "severe restrictions on his ability to interact with anyone, whether it be staff, other inmates or visitors from outside the prison."  (Id. ¶ 257).

The first step in analyzing a procedural due process claim is determining whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment.  Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).  Then, if the asserted

interest is determined to be protected by the Due Process Clause, the question becomes what process is due to protect it.  Id. (internal citations omitted).  A liberty interest may arise from the Constitution itself, or it may arise from an expectation or interest created by state laws or policies. Wilkinson, 545 U.S. at 221.  To establish a state-created liberty interest under the Fourteenth Amendment in the conditions of confinement context, "courts generally require a showing that the alleged liberty interest is substantial" and confers "freedom from restraint which imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life."  Porter v. Pa. Dep't of Corr., 974 F.3d 431, 438 (3d Cir. 2020) (quoting Williams v. Sec'y, Pa. Dep't of Corr., 848 F.3d 549, 559 (3d Cir. 2017) and Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997) (alteration and emphasis in original).

Although the decisions in Sandin and Wilkinson have provided some guidance into the inquiry on what constitutes an "atypical and significant hardship," there nevertheless remain inconsistent "conclusions for identifying the baseline from which to measure what is atypical and significant."  Williams v. Sec'y Pa. Dep't of Corr., 848 F.3d 549, 560 (3d Cir. 2017).[5]  Using

---

[5]  For example, in Meacham v. Fano, 427 U.S. 215, 224 (1976), the Supreme Court held that any change in the conditions of confinement having a substantial adverse impact on the prisoner involved is not, in and of itself, sufficient to invoke the protections of the Due Process Clause. This is because "[t]he Due Process Clause standing alone, confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" Sandin v. Conner, 515 U.S. 472, 480 (1995) (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).  Indeed, once validly convicted, "the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." Meacham, 427 U.S. at 224.  *See also* Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (holding seven-month confinement in Special Housing Unit based on false reports did not implicate protected liberty interest and noting the holding in Sandin that "confinement in administrative or punitive segregation will rarely be sufficient without more to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest," and therefore "the inmate's segregated confinement was not a denial of due process"); Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (holding administrative detention for fifteen months did not implicate liberty interest).

Wilkinson's guidance, however, the Third Circuit established a two-factor inquiry: (1) what is the duration of the challenged conditions, and (2) do the conditions overall impose a significant hardship in relation to the ordinary incidents of prison life?  Id. (citing Shoats, 213 F.3d at 144).

In this case, Easley alleges he has been held in solitary confinement for more than five years, during which he has been given ten to fifteen minutes to eat his meals alone in his cell, fed lower quality food than general population inmates, placed in handcuffs and subjected to mandatory strip searches whenever he leaves his cell, prohibited from talking with other prisoners and from participating in any organized prison activities, vocational, recreational, or educational programs, any form of communal religious worship, and from having any contact visitation and physical contact with anyone,  including clergy and family members.  Easley also avers he was limited in the amount of personal property he could keep in his cell, permitted to shower only three times a week and confined to a cell illuminated by artificial lights 24 hours each day.  (Compl. ¶¶ 265(a) – (n)).

Easley contends these conditions have caused him stress, anxiety, depression, suicidal thoughts, mental anguish, fear, deterioration in his mental health, have deprived him of sleep and placed him "in serious danger of experiencing debilitating psychological impairments for the rest of his life."  (Id. ¶¶ 267(d), (e), 269, 281-282).  Easley also submits that throughout his confinement, he was not afforded the opportunity to challenge his status, that he was "supposed to be seen every six months by the secretary or executive secretary" but was not, and under DOC policy DC ADM 802, he could only be returned to the general population upon receipt of "express authorization" from the Secretary or Executive Secretary.  (Id. ¶¶ 258-262).  Given these alleged conditions and the period of time in which Easley has purportedly been forced to endure them without the opportunity to be heard or to challenge them, I find he has plausibly alleged a cause of

action under the Fourteenth Amendment for a violation of his procedural due process rights.  The

Commonwealth Defendants' motion to dismiss is therefore denied in this regard.[6]

As noted, Easley also asserts his Eighth Amendment right to be free from cruel and unusual

punishment was violated by the foregoing enumerated conditions under which he was confined

pursuant to the RRL.  Again, the two-prong <u>Farmer</u> test is utilized to determine whether prison

officials have violated the Eighth Amendment: (1) was the deprivation "objectively, sufficiently

serious" such that a prison official's act or omission results in the denial of the "minimal civilized

measure of life's necessities, and (2) was the prison official "deliberately indifferent to inmate

health or safety"?  <u>Porter</u>, 974 F.3d at 441 (citing <u>Farmer</u>, 511 U.S. at 834).  "An official is

deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety."

<u>Id</u>. (internal citation and quotation marks omitted).  In support of the second component, Easley

cites to a number of mental health professionals who have written and opined on the deleterious

mental and physical effects of long-term solitary confinement, and asserts that the DOC in general,

and Defendants Wetzel and Little and Bickell in particular, knew of and previously acknowledged

these risks.  (Compl. ¶¶ 270-279).

Because Easley's pleadings are afforded a liberal reading, all factual allegations are

accepted as true and all reasonable inferences drawn in his favor, I find he has pled enough facts

---

[6]   Easley's Complaint does not specify whether his Due Process claim is procedural or substantive
in nature.  In the event he is seeking to state a substantive due process claim, that claim is dismissed
with prejudice.  Under the more-specific-provision rule, "if a constitutional claim is covered by a
specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be
analyzed under the standard appropriate to that specific provision, not under the rubric of
substantive due process."  <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 843-844 (1998) (quoting
<u>United States v. Lanier</u>, 520 U.S. 259, 272 n.7 (1997); <u>Betts v. New Castle Youth Dev. Ctr.</u>, 621
F.3d 249, 260 (3d Cir. 2010).  As noted <i>infra,</i> in addition to his Fourteenth Amendment procedural
due process claim, Easley also raises an Eighth Amendment challenge to the conditions of being
confined under RRL status.

to show Defendants were deliberately indifferent to the potential harm posed by the conditions of his solitary/RRL confinement to plead an Eighth Amendment claim under <u>Farmer</u> and <u>Porter</u>. Accordingly, the Commonwealth Defendants' motion to dismiss Easley's Eighth Amendment claim based on the conditions of his solitary confinement is likewise denied. **E.      State      law claims**

Easley also pleads a "tort" claim for certain missing items of personal property following his relocation to another cell on January 29, 2022.  (Compl. ¶ 225).  Specifically, Easley alleges he was not present when his property was moved to another cell and when he returned he discovered his family photographs were torn, his sheets smelled of urine, and five books and one magazine were missing.  (*Id*. ¶¶ 226-227).  He further contends that on June 4, 2022, when he redid his property, Easley found "he was missing 23 magazines, 2 rugs, a bowl, soap dish totalling 258.63, for which he filed a grievance seeking reimbursement, which was denied." (*Id.* ¶¶ 229-231).

Conversion is a tort by which the defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification.  <u>Chrysler Credit Corp. v. Smith</u>, 634 A.2d 1098, 1100 (Pa. Super. 1994).  "A plaintiff has a cause of action in conversion if he or she had actual or constructive possession of a chattel at the time of the alleged conversion."  <u>Id</u>.

As previously noted, the Department of Corrections is an agency of the Commonwealth of Pennsylvania and, as such, is protected by the Commonwealth's sovereign immunity from suit, except insofar as certain enumerated categories in which that immunity has been specifically waived are concerned.  42 Pa. C. S. § 8521.  Specifically, under 42 Pa. C. S. § 8522(b), immunity is waived for actions for damages against Commonwealth parties "arising out of a negligent act

where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity" and which fall into one of the following categories: (1) vehicle liability, (2) medical-professional liability, (3) the care, custody or control of personal property in the possession or control of the Commonwealth, (4) Commonwealth-owned real estate, highways and sidewalks, (5) potholes and other dangerous conditions, (6) the care, custody or control of animals, (7) liquor store sales, (8) National Guard activities, (9) toxoids and vaccines, and (10) sexual abuse. 42 Pa. C. S. § 8522(b)(1) – (10).

Easley avers that Defendants Hunter and Luquis intentionally trashed his cell, destroying his photographs of deceased relatives in the process. (Compl. ¶¶ 233-234). Trashing a cell and converting the property found within it are not negligent acts nor do they fall within any of the enumerated exceptions. As such, the DOC remains protected by sovereign immunity. *See e.g.* Rhoads v. Phila. Hous. Auth., 978 A.2d 431, 433 (Pa. Commw. Ct. 2009) ("this Court has specifically declared that intentional tort claims are not within the narrow exceptions set forth in 42 Pa. C. S. § 8522(b)"). What's more, while Easley identifies Hunter and Luquis as the individuals who trashed his cell, he fails to name them as the individuals who allegedly converted his property, nor does he plead any facts from which a lack of legal justification for the alleged taking may be inferred. Accordingly, this claim shall also be dismissed.

Finally, in paragraph 284(h) of his complaint, Easley asks for an award of punitive damages. The Pennsylvania Supreme Court has specifically held that punitive damages are not recoverable against an authority or department that is an agency of the Commonwealth. Feingold v. SEPTA, 517 A.2d 1270, 1277 (Pa. 1986). Easley's punitive damages claim is thus likewise dismissed with prejudice.

**IV.    CONCLUSION**

For all the reasons set forth above, the Commonwealth Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part.**   Easley's claims against the Commonwealth Defendants in their official capacities, under the Eighth Amendment for improper medical care and the assault of April 8, 2015 are **DISMISSED with prejudice**.   Likewise, Easley's claims under the First and Fourteenth Amendments for the withholding of his magazines, under the Fourteenth Amendment for violation of his rights to substantive due process, state law tort claim for conversion, and claim for punitive damages are all **DISMISSED with prejudice.**   In all other respects, the Motion is **DENIED.**

An appropriate Order follows.