IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARREN EASLEY, | : |
| **Plaintiff** | : CIVIL ACTION |
| v. | : NO. 23-cv-1718 |
| JOHN WETZEL, et. al., | : |
| **Defendants** | : |

## MEMORANDUM OPINION

**Goldberg, J.**                                                                                                          **July 24, 2024**

The Medical Defendants[1] in this § 1983 case have filed a motion to dismiss Plaintiff Warren Easley's pro se complaint against them or, in the alternative seek entry of summary judgment in their favor. Because Easley fails to state plausible claims to relief against all the Medical Defendants except Dr. Goldberg, the motion shall be granted in part and denied in part.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Easley is an inmate in the Pennsylvania state correctional system who is currently incarcerated in the State Correctional Institution ("SCI") at Rockview, in Bellefonte, Pennsylvania. Easley initiated this action pursuant to 42 U.S.C. § 1983 on May 23, 2023 to obtain redress for injuries he alleges he suffered as the result of, *inter alia*, the Medical Defendants' failure to treat and/or properly treat his medical conditions and injuries while he was an inmate at SCI Phoenix

---

[1]   The Medical Defendants are Saeed Bazel, M.D., Jason Goldberg, D.O., Carol Annino, D.O., Joseph Walsh, PA, and Jeanna DeFrangresco, CRNP.

1

in Montgomery County, Pennsylvania.  Easley also seeks to hold Defendant Dr. Saeed Bazel liable for his alleged failure to intervene in a beating Easley allegedly suffered at the hands of several correctional officers on April 20, 2022.[2]

Defendants move to dismiss all of Easley's claims pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, they assert Easley has failed to plead facts showing they were deliberately indifferent to his medical needs as required to make out a cause of action under the Eighth Amendment and § 1983, and failed to produce a certificate of merit as required to proceed under Pennsylvania state law for negligence and medical malpractice.  Drs. Annino and Bazel also move for the entry of summary judgment on the grounds that Easley failed to exhaust his administrative remedies with regard to his claims against them.

## II.   LEGAL STANDARDS

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  In reviewing the complaint, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. Pearson v. Sec'y. Dep't. of Corr., 775 F.3d 598, 604 (3d Cir. 2015).  "A pleading

---

[2]   A separate motion to dismiss was filed by the numerous Commonwealth Defendants: John Wetzel, George Little, Mandy Sipple, Jaime Sorber, Tabb Bickell, Joseph Terra, David Mascellino, Andrew Reber, Jamie Luquis, Kevin Young, Michael Bianco, Michelle Trinh, Jonathan Hall, Dion Hunter, Matthew Kull, Kysherald Patterson, Ijia Phillips, James Nicholson, Richard Thompson, George Smits, Joseph Gonzalez, Decon Voorhees, James Martin, Anthony Talarico, Moises Mateus, Tyler Moser, Jeff Brewer, Jamal Gilliard and Anthony Hamilton.  That motion is addressed in a separate Memorandum Opinion.

that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678.  Pro se pleadings are held to less stringent standards than those prepared by counsel and must be liberally construed.  Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244 (3d Cir. 2013) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)).  Consequently, courts are to apply the relevant legal principles even when a complaint fails to name them.  Id. Nevertheless, pro se litigants "cannot flout procedural rules" and "still must allege sufficient facts in their complaints to support a claim." Id.

Summary judgment motions under Fed. R. Civ. P. 56 are determined under a somewhat different standard.  Under subsection (a) of the Rule,

> a party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Facts are material if they might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A genuine dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id; Stone v. Troy Constr., LLC, 935 F.3d 141, 148, n.6 (3d Cir. 2019). "The issue of material fact required … to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249.  In resolving this issue, courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the motion.'" Scott v. Harris, 550 U.S. 372, 378 (2007).

## III. DISCUSSION

To allege a cause of action under Section 1983, a plaintiff must plead a deprivation of a constitutional right by a person acting under the color of state law. Garrett v. Wexford Health, 938 F.3d 69, 95 (3d Cir. 2019). By its terms, Section 1983[3] creates no substantive rights, but merely provides remedies for deprivation of rights established elsewhere. Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985). "The first step in evaluating a § 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (internal citations omitted). Next, a plaintiff must demonstrate the defendant was "personally involved in the wrongs alleged." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga, 806 F. 3d at 222.

Easley's claims against the Medical Defendants emanate from the Eighth Amendment and its prohibition against cruel and unusual punishment. This prohibition restrains prison officials from certain actions (such as use of excessive force against prisoners) and imposes on them a duty

---

[3] §1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable . . .

to provide "humane conditions of confinement." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994). "That is, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates." Id. (internal quotation marks and citation omitted). For an alleged deprivation to rise to the level of an Eighth Amendment violation, it must result in the "denial of [the] minimal civilized measure of life's necessities," and a condition of confinement violates the Eighth Amendment only if it is "so reprehensible as to be deemed inhumane under contemporary standards" or "deprives an inmate of the minimal civilized measure of the necessities of life." McKinney v. Piazza, Civ. No. 20-6963, 2022 U.S. Dist. LEXIS 225053 at *19 (D. N.J. Dec. 14, 2022) (quoting Farmer, 511 U.S. at 835); Dickens v. Taylor, 464 F. Supp. 2d 341, 348 (D. Del. 2006).

Notwithstanding the government's obligation to provide medical care for those whom it is punishing by incarceration, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 103, 106 (1976). Medical malpractice does not become a constitutional violation merely because the victim is a prisoner; rather, to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to manifest deliberate indifference to his serious medical needs. Id. at 106.

Deliberate indifference entails something more than mere negligence; it is a subjective standard that requires the official to both be aware of facts from which it could be inferred that a substantial risk of serious harm exists, and requires that the inference be drawn. Pearson v. Prison Health Serv., 850 F.3d 526, 538 (3d Cir. 2017) (internal quotation marks and citation omitted). A medical need is "serious" if it is one that has been diagnosed by a physician as requiring treatment

or is so obvious that a lay person would easily recognize the need for a doctor's attention. Monmouth Cnty. Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal citation and quotations omitted). An accidental or inadvertent failure to provide adequate medical care to a prisoner does not violate the Eighth Amendment. Helling v. McKinney, 509 U.S. 25, 32 (1993). Accordingly, to successfully plead an Eighth Amendment violation, a plaintiff must allege: (1) that the defendants were deliberately indifferent to his medical needs; and (2) those needs were serious. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

In this manner, the deliberate indifference standard affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients, and the Courts generally disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citation omitted). Inherent in this latitude, however, is the assumption that such an informed medical judgment has in fact been made. Id. But when prison authorities prevent an inmate from receiving recommended treatment for serious medical needs, deny access to a physician capable of evaluating the need for such treatment, or where denial or delay in treatment causes an inmate to suffer a life-long handicap or permanent loss, the constitutional threshold established by Estelle has been crossed. Helling, 509 U.S. at 32; Inmates of Allegheny, 612 F.2d at 762.

Easley's complaints against Defendants Drs. Goldberg and Annino, Physician's Assistant ("PA") Walsh and Certified Registered Nurse Practitioner ("CRNP") DeFrangresco arise out of an "incident which led [his] ankle to swell up 3X its size" for which he was sent to Eastern Hospital on June 26, 2021. (Compl. ¶ 171). Easley avers he "could not perform range of motion at all in ankle" when he was sent to the hospital, and that Dr. Goldberg, who was "the medical director at

the time refused to provide [him] with follow up orders of crutches." (Id. ¶ 172). On July 16, 2021, Easley alleges his ankle was still swollen, deformed and he could not walk on it and DeFrangresco "said she will finally provide [the] crutches ordered on 6-28-21 but did not provide such." (Id. ¶ 173). On August 8, 2021, "still in pain in ankle" and still suffering from swelling and an inability to put weight on his ankle," Easley purportedly saw PA Walsh but he also "failed to provide treatment or follow up treatment due to directions of Defendant Goldberg." (Id. ¶s 176-177). Because he still couldn't put any weight on his ankle and was suffering from plantar warts on his foot, Easley saw a podiatrist, who gave orders for an ankle brace. (Id. ¶s 174-175). Easley contends Goldberg denied and refused to provide him the follow-up treatments ordered, and as a result, his ankle is now "deformed and tilts" and he "cannot do jump n jacks or put heavy on left ankle due to injury healing and wrong after repeated denials of medical treatment." (Id. ¶ 178). As to Dr. Annino, Easley alleges he put in a sick call request on September 26, 2021 due to his ankle pain but on that date, Annino "refused to properly examine [him] or provide treatment." (Id. ¶ 213). Easley was, however, seen and treated by Annino on October 1, 2021 for his ankle issues. (Id. ¶ 215).

These allegations are sufficient to plead cognizable Eighth Amendment claims against Defendant Goldberg, but not against Annino, DeFrangresco, or Walsh. Although Easley alleges sufficient facts to suggest that Goldberg denied him needed medical treatment resulting in a permanent deformity, he nevertheless concedes he was in fact seen and treated by Annino a few days after he put in his sick call request and avers DeFrangresco and Walsh only denied him treatment because of Goldberg's instructions. (Id. ¶¶ 176-178). Thus, while Goldberg's conduct rises to the level of "obduracy and wantonness" prohibited by the Cruel and Unusual Punishments Clause required for an Eighth Amendment violation, Annino, DeFrangresco, and Walsh's conduct

does not. Whitley v. Albers, 475 U.S. 312, 319 (1986). Accordingly, while the motion shall be denied as to Easley's Eighth Amendment claims against Goldberg, these claims shall be dismissed with prejudice as to DeFrangresco, Walsh and Annino.[4]

Easley also purports to raise state law claims for medical malpractice and negligence against the medical defendants arising out of the same alleged conduct. Under Pennsylvania law, to state a prima facie cause of action for medical malpractice, a plaintiff must establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered and the damages suffered were a direct result of the harm. Hightower-Warren v. Silk, 698 A.2d 52, 54 (Pa. 1997). The plaintiff must also provide a medical expert who will testify as to the elements of duty, breach, and causation. Id. Stated otherwise, a plaintiff must prove that the defendant's treatment fell below the appropriate standard of care – that is, it varied from accepted medical practice. Mitchell v. Shikora, 209 A.3d 307, 314-315 (Pa. 2019).

In addition, "Pennsylvania Rule of Civil Procedure 1042.3(a) requires that a certificate of merit be filed 'in any action based upon an allegation that a licensed professional deviated from an acceptable professional standard.'" Bistrian v. Levi, No. 08-cv-3010, 2010 U.S. Dist. LEXIS 77348 at *34 (E.D. Pa. July 29, 2010), *aff'd in part, rev'd in part, remanded on other grounds*, 696 F.3d 352 (3d Cir. 2012). This certificate must be filed either with the complaint or within sixty days after the complaint, although "the court, upon good cause shown, shall extend the time for filing a certificate of merit for a period not to exceed sixty days." PA. R. C. P. 1042.3(a), (d).

---

[4] The Defendants also move for dismissal of Annino from this action on the grounds that Easley failed to exhaust his administrative remedies on his claim against her, as well as Drs. Bazel and Goldberg.

8

Rule 1042.3 is a substantive state law that federal district courts must apply.  Perez v. Griffin, No. 08-2979, 304 F. App'x 72, 74 (3d Cir. 2008).

As noted, even giving Easley's complaint a broad and liberal interpretation, it appears he is endeavoring to assert causes of action against all the Medical Defendants for incidents of negligence and medical malpractice which allegedly occurred between June 26 and August 8, 2021.  However, his complaint, which was filed on May 3, 2023 was not accompanied by the required certificates of merit, nor has he filed one to date despite having had more than one year to do so.  Pursuant to 42 Pa. C. S. § 5524(7), the statute of limitations in Pennsylvania for negligence and medical malpractice claims is two years.  Accordingly, Easley is now time-barred from pursuing these causes of action, and they are therefore dismissed with prejudice at this time.

I turn next to Easley's claim against Dr. Bazel for his alleged failure to intervene to protect him on April 20, 2022 when he alleges he was beaten by six corrections officers in the triage unit.  There is no question that the Eighth Amendment's prohibition on cruel and unusual punishment operates to impose a duty on prison officials to take reasonable measures to protect prisoners from violence at the hands of others.  See Farmer v. Brennan, 511 U.S. at 831.  For an inmate to prevail on a failure to protect claim, two requirements must be met.  Hamilton v. Levy, 117 F.3d 742, 746 (3d Cir. 1997).  First, the prisoner must show that he is incarcerated under conditions posing a substantial risk of serious harm, and second, that the official knew of but disregarded an excessive risk to the inmate's health or safety, *i.e.*, the official had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 843; Hamilton, 117 F.3d at 746.  However, liability may only be imposed if there is a duty to intervene as well as "a realistic and reasonable opportunity" to do so.  Smith v. Mensinger, 293 F.3d 641, 650-651 (3d Cir. 2002).  In determining whether an opportunity to intervene existed, courts consider many factors including the temporal length of the alleged assault,

the proximity of the non-intervening party to the alleged assault, and the ability of the non-intervening party to perceive and/or hear the alleged assault.  Waugaman v. City of Greensburg, No. 2:17-330, 2019 U.S. Dist. LEXIS 95887 at *27 - *28 (W.D. Pa. June 7, 2019) (internal quotation marks and citations omitted).  Where a medical provider is not an employee of the prison but is instead an independent private contractor who provides services to inmates and "has no law enforcement or corrections standing, status, duties, or training," there simply is no duty to intervene.  Smith v. Donate, No. 4:10-cv-2133, 2012 U.S. Dist. LEXIS 72506 at *18 (M.D. Pa. Apr. 5, 2012).  *See also* Ali v. McAnany, No. 06-3283, 262 F. App'x 443, 446 (3d Cir. Jan. 25, 2008) (affirming dismissal of inmate's claim against nurse for failing to intervene in alleged use of excessive force by another nurse in extracting blood because first nurse was "not a corrections officer and thus did not have a duty to intervene under the rule acknowledged in Smith."

With regard to the April 20, 2022 incident, Easley alleges only that "[t]he whole time PA medical doctor was present Defendant Bazel never intervened and watched as Defendants maliciously beat Plaintiff."  (Compl. ¶ 94).  Dr. Bazel is not a Commonwealth Defendant – he simply worked as a medical doctor at SCI Phoenix.  (Defs' Goldberg, Walsh, DeFrangresco Ans. to Pl.'s Compl., ¶ 11, ECF No. 27).  There are no facts alleged from which it may reasonably be inferred that Dr. Bazel had any duty to intervene or had the ability to stop the six corrections officers from beating Easley.  The failure to intervene claim against Bazel is therefore also dismissed.

Finally, Drs. Bazel, Annino and Goldberg all move to dismiss Easley's claims against them because he failed to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e.

Under Section 1997e(a),

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983) or any other Federal law, by a prisoner confined in any jail, prison or correctional facility until such administrative remedies as are available are exhausted.

And, under Section 1997e(c)(1),

> The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1970 of the Revised Statutes of the United States (42 U.S.C. § 1983) or any other Federal law, by a prisoner confined in any other jail, prison or correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

In keeping with Congress' goal of reducing the quantity and improving the quality of prisoner suits and filtering out frivolous claims, Section 1997e(a)'s exhaustion requirement is mandatory and applies to all prisoners seeking redress for prison circumstances or occurrences. Porter v. Nussle, 535 U.S. 516, 520, 524-525 (2002). If a claim is not administratively exhausted, it cannot be brought. Jones v. Bock, 549 U.S. 199, 211 (2007). To properly exhaust administrative remedies, prisoners must "complete the administrative review process in accordance with the applicable procedural rules," that is, "rules that are not defined by the PLRA, but by the prison grievance process itself." Id. at 218 (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)).

The Pennsylvania Department of Corrections Grievance Policy Number DC-ADM-804 applies to "all facilities operated under the jurisdiction of, or conducting business with the Department of Corrections, Department employees, volunteers, contract personnel, visitors, and inmates," and provides "a formal procedure through which to seek resolution of problems or other issues of concern arising during the course of confinement." DC-ADM-804(I),(II). www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20inmate%20Inmate%20Grivances.pdf. "For every such issue, there shall be a forum for review and two avenues of appeal." Id. Thus, DC-ADM-804 provides for three stages

11

of review, which must be substantially complied with to satisfy § 1997e's exhaustion mandate. Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004). Specifically, the grievance policy provides as a first step that, except in cases involving physical or sexual abuse, the inmate should attempt to informally resolve by use of a DC-135A "Inmate Request to Staff Member" form or direct communication with a Unit Manager or Officer in Charge, who will determine whether the grievance will be accepted or rejected. DC-ADM-804, § 1(A)(3), (5)(b). If the issue isn't informally resolved to the inmate's satisfaction, a formal grievance may be initiated by submitting a DC-804 Part 1 form to the Facility Grievance Coordinator/designee within fifteen days of the event complained of. Id., § 1(A)(4), (5), (8). If a grievance is rejected, it may be resubmitted within five days of the notice rejection date. Id. § 1(A)(20). Upon receipt of the grievance filing, the Facility Grievance Coordinator shall assign it a tracking number, and upon finding the grievance was properly submitted, assign a staff member to serve as the Grievance Officer for the grievance. Id. § 1(C)(1), (3). The Grievance Officer will then submit a proposed response, including a brief rationale for his/her conclusions and any action taken or recommended to resolve the issues raised in the inmate's grievance. Id. § 1(C)(5). The response must be provided to the inmate within fifteen working days from the date the grievance was entered into the Automated Inmate Grievance Tracking System, and must state one of the following: "Uphold Inmate," "Grievance Denied," or "Uphold in Part/Deny in Part." Id. The Facility Grievance Coordinator shall then review it for compliance with policy and procedures, approve it or return it to the Grievance Officer for further review; once approved, the Grievance Coordinator will initial it and return to the Grievance Officer for distribution to the inmate. Id. § 1(C)(6).

An inmate may appeal the response or rejection of the grievance to the Facility Manager within fifteen working days in writing stating the reasons for the appeal, and the Facility Manager

shall respond within fifteen working days that he/she will "Uphold Response," "Uphold Inmate," "Dismiss/Dismiss Untimely," or "Uphold in Part/Deny in Part." Id. § 2(A)(2)(a), (d). If the inmate is still displeased with the decision, he/she may file an "Inmate Appeal to Final Review" within fifteen working days of the Facility Manager's decision, raising only the matters raised in the preceding appeal and the initial grievance and sending it to the "Chief, Secretary's Office of Inmate Grievances and Appeals" ("SOIGA") in Mechanicsburg, PA. Id. § 2(B)(1)(b), (i). The SOIGA shall ensure that a decision on the final appeal is made within thirty days. Id. § 2(B)(2).

In this case, as reflected by the exhibits attached to the instant motion, Easley filed some five grievances related to the medical and dental treatments about which he complains in this case, two of which (Grievance Nos. 937256 and 939426) arguably apply to just two of the medical defendants – Dr. Goldberg and CRNP DeFrangresco, for failing to provide him with crutches, and failing to provide him with medical treatment. (ECF No. 28-1, 28-2). In failing to name Drs. Annino and Bazel in any of his grievances, Easley failed to administratively exhaust the claims which he now seeks to pursue against them. See, e.g., Williams v. Pennsylvania Dep't of Corr., 146 F. App'x 554, 557 (3d Cir. 2005) (holding Williams' "failure to identify" defendants Herbert, Street and Smith in either of his two grievances "means that he failed to exhaust his administrative remedies in accordance with Pennsylvania's grievance process and the PLRA."). Accordingly, the claims against Annino and Bazel are properly dismissed with prejudice.

However, Easley did administratively exhaust his claims for the denial of crutches against CRNP DeFrangresco and Dr. Goldberg in filing his grievance in No. 937256. (ECF No. 28-1, page 4 of 9). Because he has failed to state a claim on which relief can be granted against DeFrangresco, Easley's claim against her is foreclosed. But his claim against Dr. Goldberg is not.

13

Consequently, the Medical Defendants' motion is denied in this respect, and Dr. Goldberg shall be directed to file an Answer to Easley's complaint.

## IV. CONCLUSION

For all the reasons outlined above, Easley has not pled viable claims to relief against Drs. Annino and Bazel, CRNP DeFrangresco, or PA Walsh. The Medical Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment, is therefore granted as to each of those Defendants. Because Easley has pled viable claims against Defendant Dr. Goldberg, the Motion to Dismiss is denied as to him alone.

An appropriate Order follows.